UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Esther Avila,
    Plaintiff,

v.　　　　　　　　　　　　　　　　File No. 2:05-CV-309

Mike Smith, Secretary,
Human Services Agency;
Samantha Haley; John Dick;
Joshua Slen; Stage Coach
Transportation Broker;
David Palmer; Kelly
Wheatly;
    Defendants.

OPINION AND ORDER[1]
(Papers 9, 15 and 27)

Plaintiff Esther Avila, proceeding *pro se* and *in forma pauperis*, claims that the defendants have wrongfully denied her Medicaid funding for travel to medical appointments outside of Vermont. Avila, age 67, suffers from a rare "congenital anomaly of the spinal cord." Her condition has required her to receive treatment in Boston, New York, and California. Because the defendants have denied Avila funds to travel to specialists outside of Vermont, the complaint charges them with discrimination and disparate treatment.

---

[1] This Opinion and Order was originally issued as a Report and Recommendation. Because the parties have each consented to the direct assignment of this case pursuant to 28 U.S.C. § 636(c), the opinion must be re-issued.

The Court has ordered that defendants Smith, Haley, Dick and Slen (collectively "State Defendants") be served personally and in their official capacities. The State Defendants now move to dismiss the complaint, arguing that Avila has failed to properly allege discrimination, and that her claims are not actionable under 42 U.S.C. § 1983. The State Defendants also claim sovereign immunity to the extent that they are being sued for damages in their official capacities. The motion to dismiss is unopposed. For the reasons set forth below, the State Defendants' motion is GRANTED, and Avila is granted leave to amend her complaint to include facts in support of her discrimination claims.

## Factual Background

For the purposes of the pending motion to dismiss the facts alleged in the complaint will be accepted as true. Esther Avila has lived in Vermont since 1999. In December, 2000, she underwent a spinal procedure at Loma Linda Medical Center in California. Avila traveled to California because no physician in the northeast was competent to undertake this procedure. In January, 2002, she had spine revision surgery at the Hospital for Joint

Diseases in New York City. As with the California procedure, this surgery was performed out of state because of the physician's particular expertise. Avila did not receive Medicaid compensation for travel to either of these two procedures. In February, 2002, she "was provided with a trip to New York City" for a post-operative visit. She may also have received funding for a visit to New York in April, 2002.

In July, 2002, Avila suffered a bad fall. Her condition has been getting worse since that time. Beginning in the latter part of 2002 and continuing through November, 2004, Avila received treatment at Brigham and Women's Hospital and the Dana Farber Cancer Institute in Boston. In December, 2004, she moved from Middlebury to Taftsville, Vermont. After her move, employees of Stage Coach Transportation, which provides Medicaid-funded transportation for Windsor County, denied all but "perhaps" one of Avila's requests for transport. Following these denials, Avila filed an administrative complaint with the Vermont Department of Human Services.

A hearing was held on October 13, 2005. Avila has attached to her complaint a copy of the hearing officer's

decision. (Paper 11 at 19-31). At the hearing, the Department for Children and Families, Economic Services Division ("DCF") argued that Avila could be treated in Vermont, and that she had failed to adequately document the necessity of traveling out of state. The hearing officer disagreed, recommending to the Human Services Board that Avila be provided transportation to her treatments in Boston. Id. at 27. The hearing officer further ruled that "DCF is free to investigate the petitioner's continued need for this benefit if it wishes but now has a clear burden of proving that the situation has changed to succeed in withdrawing this benefit from the petitioner in the future." Id. at 31.

On November 4, 2005, the Human Services Board entered an Interim Order requiring DCF to "provide Medicaid transportation services for the petitioner for appointments with her doctors in Boston until the Department completes a further review of the petitioner's medical need for such services." (Paper 8-4 at 1). The State Defendants claim that DCF attempted to conduct such a review, but that Avila would not provide the required medical records. In a memorandum from the Human Services

4

Board dated March 10, 2006, the State was notified that Avila had withdrawn her administrative claims.

Avila commenced this action on November 28, 2005. Her complaint alleges that she is entitled to Medicaid funded transportation out of state, and that she is being denied services while other Vermont residents are reimbursed for their out-of-state travel costs. She further claims that the defendants are denying her requests for non-economic reasons. Also pending before the Court is Avila's emergency motion for a mandatory injunction, in which she is seeking funds for travel to Cedar-Sinai Medical Center in California for appointments commencing on May 23, 2006. (Paper 27).

## Discussion

### I. Motion to Dismiss Standard

The State Defendants have moved to dismiss pursuant to Fed. R. Civ. P. 12(b). A motion to dismiss should only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." Weixel v. Board of Educ. of New York, 287 F.3d 138, 145 (2d Cir. 2002) (quoting Conley v. Gibson, 355 U.S. 41, 45-46

(1957)). When deciding a motion to dismiss, courts must accept all factual allegations in the complaint as true, and draw all reasonable inferences in the nonmovant's favor. See <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 152 (2d Cir. 2002) (citing <u>Gregory v. Daly</u>, 243 F.3d 687, 691 (2d Cir. 2001)). When a plaintiff is proceeding *pro se*, courts must construe the complaint liberally. <u>See</u> <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972); <u>see also</u> <u>Boddie v. Schnieder</u>, 105 F.3d 857, 860 (2d Cir. 1997).

In this case, the parties have submitted documents pertaining to a state-level administrative hearing process. Some of these documents were attached to the complaint, while others were provided in response to a Court request for additional information. The State Defendants submitted further documentation with their motion to dismiss. Although courts generally do not consider matters outside the pleadings, they may consider documents attached to the pleadings, documents referenced in the pleadings, or documents that are integral to the pleadings. See <u>Chambers</u>, 282 F.3d at 152-53; <u>see also</u> <u>In re Initial Pub. Offering Sec. Litig.</u>, 241 F. Supp. 2d 281, 331 (S.D.N.Y. 2003). Courts have also held that

records of state administrative proceedings may be considered. <u>See</u>, <u>e.g.</u>, <u>Thomas v. Westchester County Healthcare Corp.</u>, 232 F. Supp. 2d 273, 276 (S.D.N.Y. 2002).

II. <u>Discrimination Claim</u>

The State Defendants first argue that Avila has failed to allege sufficient facts to support a claim of either discrimination or disparate treatment. In her complaint, Avila states that she is elderly and disabled. The substance of her discrimination claim is that others in Vermont have been allowed Medicaid reimbursement for out-of-state care, while she has been denied.

Avila's claims imply that she is a member of a protected class, and that she is being discriminated against based upon her membership in that class. A close reading of the complaint, however, reveals that Avila's complaint does not center on her special status as either an elderly or a disabled person. Instead, the complaint and the administrative record show that Avila and the defendants have had an ongoing disagreement about whether she requires out-of-state medical services. Avila claims that she has been unreasonably denied transportation

7

costs for these services, and is suing to enforce an alleged federal right to such services. Although, as discussed below, Avila arguably states a federal cause of action, her allegations do not suffice for a claim of discrimination.

To show disparate treatment, a plaintiff must demonstrate that "discriminatory purpose was a motivating factor" in the defendant's action. See Village of Arlington Heights v. Metropolitan Housing Dev. Corp., 429 U.S. 252, 270 (1977). A complaint claiming discrimination need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Swierkiewicz v. Sorema, 534 U.S. 506, 514 (2002). "To withstand dismissal, however, a complaint alleging discrimination cannot rest on conclusory allegations of discrimination, but must contain 'facts supporting the grounds upon which [the] claim of . . . discrimination rests.'" Reid v. Zackenbaum, 2005 WL 1993394, at * 3 (E.D.N.Y. August 17, 2005) (quoting Straker v. Metropolitan Transit Authority, 333 F. Supp. 2d 91, 102 (E.D.N.Y. 2004)).

Although Avila suggests that the defendants' conduct

is motivated by discriminatory animus, her claims do not link that conduct to either her age or her disability. Her disparate impact claim is that other Vermonters have been granted transportation funding, while she has been denied. She does not claim, or even suggest, that those other Vermonters are younger or less disabled than she. Nor does she claim that others of similar age or with similar conditions have been awarded Medicaid funds, and that she has been singled out for denial in a discriminatory fashion.

A liberal reading of the complaint could construe Avila's claim as alleging that because her condition is so serious, her needs are greater than most, and that the expense of those needs is a reason for her denial. Avila herself counters this reading, explicitly stating that the refusals are not based upon economic considerations. (Paper 11-2 at 2). Another explanation for her claims of disability may be her contention that these claims entitle her to federal jurisdiction.

> Ms. Esther E. Avila, contends as an elderly, disabled lady has satisfied elements necessary for jurisdiction in this Honorable United States District Court - The continuous denials of assistance with Medicaid funded transportation since December 2004 has been discriminatory and

9

> grossly disparate and repeatedly challenging my complex <u>Disability</u> of Occult Spinal Dysraphism and the numerous consequences that come with this congenital anomaly of the Spinal Cord and cited in NORD National Organization of Rare Diseases.

Whatever her reasons for alleging discrimination, her conclusory allegations fail to state a claim and are DISMISSED, with leave to amend as set forth below.

III.   <u>Claim Under 42 U.S.C. § 1983</u>

The lack of an adequate discrimination claim does not necessarily relieve the Court of jurisdiction in this case. As the State Defendants note in their motion to dismiss, a plaintiff may bring a claim under 42 U.S.C. § 1983 if she alleges the violation of a federal right. (Paper 15-1 at 6, citing <u>Blessing v. Freestone</u>, 520 U.S. 329, 340-41 (1997)). The fundamental dispute presented by Avila's complaint is whether the defendants have violated federal law by challenging her alleged need for out-of-state care. Accordingly, under § 1983, the essential question is whether Medicaid-funded transportation, in addition to being a part of federal law, constitutes a federal right. <u>See</u> <u>Alexander v. Sandoval</u>, 532 U.S. 275, 291 (2001) ("Language in a regulation may invoke a private right of action that

Congress through statutory text created, but it may not create a right that Congress has not.").

"Medicaid is a health insurance program, jointly funded by the state and federal governments, that pays for health care for America's poor. The federal and state governments share the cost of Medicaid roughly equally, but state governments administer the program." Connecticut Dep't of Social Services v. Leavitt, 428 F.3d 138, 141 (2d Cir. 2005) (citing 42 U.S.C. § 1395, et seq.). Under the Medicaid Act, states must "provide that (A) any individual eligible for medical assistance . . . may obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required . . . who undertakes to provide him such services." 42 U.S.C. § 1396a(a)(23). Transportation services are provided for in the Medicaid regulations. Those regulations state that a Medicaid plan must "[s]pecify that the Medicaid agency will ensure necessary transportation for recipients to and from providers . . . ." 42 C.F.R. § 431.53(a) (2005).

The Second Circuit has not resolved "whether a regulation, standing alone, can provide a right

enforceable through § 1983." In re NYAHSA Litigation, 318 F. Supp. 2d 30, 40 (N.D.N.Y. 2004) (citing King v. Town of Hempstead, 161 F.3d 112, 115 (2d Cir. 1998) and Rodriguez v. City of New York, 197 F.3d 611, 617 (2d Cir. 1999)). Most circuits have held that regulations do not, by themselves, create federal rights, and that such rights must be at least implicitly recognized "in the regulation's enforcing statute." Id. (citing cases); see also Smith v. Kirk, 821 F.2d 980, 984 (4th Cir. 1987). The Supreme Court has not spoken clearly on the issue. Compare Guardians Ass'n v. Civil Serv. Comm'n of New York, 463 U.S. 582, 638 (1983), with Wright v. Roanoke Redevelopment & Hous. Auth., 479 U.S. 418, 423 (1987) (O'Connor, J., dissenting, joined by Rehnquist, C.J., Powell, J., and Scalia, J.).

The Eleventh Circuit, acknowledging this split of authority, has thoroughly examined the question of whether the transportation requirement in the Medicaid regulations creates a right that is enforceable under § 1983. Harris v. James, 127 F.3d 993 (11th Cir. 1997). In Harris, the Eleventh Circuit reviewed the relevant Supreme Court precedent, and concluded that "the driving

force behind the Supreme Court's case law in this area is a requirement that courts find a Congressional intent to create a particular federal right." Id. at 1008.

> [S]o long as the statute itself confers a specific right upon the plaintiff, and a valid regulation merely further defines or fleshes out the content of that right, then the statute – in conjunction with the regulation – may create a federal right as further defined by the regulation . . . .
>
> On the other hand, if the regulation defines the content of a statutory provision that creates no federal right . . . or if the regulation goes beyond explicating the specific content of the statutory provision and imposes distinct obligations in order to further the broad objectives underlying the statutory provisions, we think the regulation is too far removed from Congressional intent to constitute a "federal right" enforceable under § 1983.

Id. at 1009. The Harris court then analyzed the relevant sections of the Medicaid Act, including the section allowing recipients "to obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required." 42 U.S.C. § 1396(a)(23). The court concluded that while the regulations requiring states to provide transportation for Medicaid recipients "furthers the broad objectives underlying [this] statutory provision," those regulations did not confer a federal right. 127

force behind the Supreme Court's case law in this area is a requirement that courts find a Congressional intent to create a particular federal right." Id. at 1008.

> [S]o long as the statute itself confers a specific right upon the plaintiff, and a valid regulation merely further defines or fleshes out the content of that right, then the statute – in conjunction with the regulation – may create a federal right as further defined by the regulation . . . .
>
> On the other hand, if the regulation defines the content of a statutory provision that creates no federal right . . . or if the regulation goes beyond explicating the specific content of the statutory provision and imposes distinct obligations in order to further the broad objectives underlying the statutory provisions, we think the regulation is too far removed from Congressional intent to constitute a "federal right" enforceable under § 1983.

Id. at 1009. The Harris court then analyzed the relevant sections of the Medicaid Act, including the section allowing recipients "to obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required." 42 U.S.C. § 1396(a)(23). The court concluded that while the regulations requiring states to provide transportation for Medicaid recipients "furthers the broad objectives underlying [this] statutory provision," those regulations did not confer a federal right. 127

F.3d at 1011-12.

> In other words, we do not think that transportation to and from providers is reasonably understood to be part of the *content* of a right to prompt provision of service, comparable assistance, or choice among providers. Instead, if the regulation is a valid interpretation of these provisions, it would be because transportation may be a reasonable means of *ensuring* the prompt provision of assistance, comparable assistance, or choice among providers. Such links to Congressional intent may be sufficient to support the validity of a regulation; however, we think they are too tenuous to support a conclusion that Congress has unambiguously conferred upon Medicaid recipients a federal right to transportation enforceable under § 1983.

Id. (emphasis in original); cf. South Camden Citizens In Action v. New Jersey Dep't of Envtl. Protection, 274 F.3d 771, 786-88 (3d Cir. 2001) (adopting Harris analysis and concluding that EPA disparate impact regulations cannot create federal rights); but see Morgan v. Cohen, 665 F. Supp. 1164, 1175 (E.D. Pa. 1987) (finding Medicaid transportation regulation enforceable under § 1983).

This Court finds the Harris approach persuasive. If, as the majority of circuits have held, a regulation does not create a federal right without a recognition of that right in the enforcing statute, then Medicaid's transportation regulation creates no such right. The

Medicaid Act provides that recipients shall have a choice among providers. 42 U.S.C. § 1396(a)(23). The transportation regulation furthers the implementation of this broad objective, but does not, alone, provide Medicaid recipients with a federal right to transportation services. "To hold otherwise would be inconsistent with the driving force of Supreme Court precedent requiring a *Congressional* intent to create federal rights and with the Supreme Court's directive that courts must find that Congress has *unambiguously* conferred federal rights on the plaintiff." Harris, 127 F.3d at 1009. Accordingly, this Court finds that Avila cannot bring a claim for denial of transportation services under § 1983.

IV. Sovereign Immunity

Avila's claims for money damages against the State Defendants in their official capacities are barred by the State of Vermont's sovereign immunity. Unless the state has waived its sovereign immunity under the Eleventh Amendment, a suit for money damages may not be maintained against the state itself, or against any agency or department of the state. See Florida Dep't of State v.

15

Treasure Salvors, 458 U.S. 670, 684 (1982). Section 1983 does not override a state's Eleventh Amendment immunity. See Quern v. Jordan, 440 U.S. 332, 342 (1979). Eleventh Amendment immunity also protects state officials sued for damages in their official capacities, since any recovery would be expended from the public treasury. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101 n. 11 (1984). Accordingly, Avila's claims for money damages against the State Defendants in their official capacities are DISMISSED.

V. Leave to Amend Discrimination Claim

A complaint drafted by a *pro se* plaintiff should not be finally dismissed unless "it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations." Boddie v. Schneider, 105 F.3d 857, 860 (2d Cir. 1997) (citation omitted). In this case, Avila claims discrimination, but has failed to allege facts in support of her claim. Although the record suggests that this deficiency may be due to the nature of her claim, it is also conceivable that discrimination based upon age or disability has been a motivating factor for the

defendants. If so, Avila needs to allege specific facts in support of her claim. As discussed above, general allegations of discrimination and disparate treatment will not suffice.

Where a court perceives a deficiency in a *pro se* plaintiff's complaint, the court should grant leave to amend at least once if there is any indication that a valid claim could be stated. Branum v. Clark, 927 F.2d 698, 704-05 (2d Cir. 1991). Avila is therefore granted 30 days to amend her complaint to add facts in support of her discrimination claims.

## VI. Remaining Motions

Currently pending before the Court, in addition to the State Defendants' motion to dismiss, are Avila's motions for a hearing (Paper 9) and for an emergency injunction compelling the defendants to pay for her transportation to California (Paper 27). For the reasons set forth above, Avila's complaint cannot be allowed to proceed as currently drafted. Accordingly, there is no need for a hearing at this time. Nor is there a basis for the Court to find a likelihood of success on the merits, a finding that is required prior to granting a

motion for preliminary injunctive relief.[2]  See Mastrovincenzo v. City of New York, 435 F.3d 78, 89 (2d Cir. 2006).  I therefore deny Avila's motion for a hearing (Paper 9) and her motion for an emergency mandatory injunction (Paper 27).

## Conclusion

For the reasons set forth above, the State Defendants' motion to dismiss (Paper 15) is GRANTED, and Avila's motion for an emergency mandatory injunction (Paper 27) is DENIED.  Avila's motion for hearing (Paper 9) is also DENIED.  Avila may have 30 days to amend her complaint.  Failure to timely file an amended complaint may result in the dismissal of this case.

Dated at Burlington, in the District of Vermont, this 26th day of May, 2006.

/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge

---

[2] The Court need not decide at this time whether Avila's motion would require a change in the *status quo*, thus requiring a heightened showing of likely success.